Copies Mailed/Faxed 6/29/18 JH
Chambers of Vincent L. Briccetti

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/29/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CHARLES PELLIS,
          Plaintiff,

v.

LIEUTENANT HOBBS, SERGEANT
PADGETT, and STATE SHOP ADMIN
JACQUELINE CAMPBELL,
          Defendants.
----------------------------------------------------------------x

**OPINION AND ORDER**

16 CV 4023 (VB)

Briccetti, J.:

Plaintiff Charles Pellis, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983 against defendants Lieutenant Charles Hobbs, Sergeant Richard Padgett, and State Shop Administrator Jacqueline Campbell for violating his First and Eighth Amendment rights.

Before the Court is defendants' motion for summary judgment. (Doc. #61).

For the reasons set forth below, defendants' motion is GRANTED IN PART and DENIED IN PART.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

**BACKGROUND**

The parties have submitted briefs, declarations with exhibits, and statements of material fact pursuant to Local Civil Rule 56.1, which reflect the following factual background.

Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). On July 30, 2015, plaintiff was temporarily transferred from Fishkill Correctional Facility ("Fishkill") to Collins Correctional Facility ("Collins"). In connection with the transfer, a correction officer ("C.O.") told plaintiff that

1

except for underclothing, he could only bring one set of prison-issued everyday clothing, known as "greens."

Plaintiff was at Collins for approximately two weeks. He returned to Fishkill on August 13, 2015, and rejoined Fishkill's general population. Plaintiff claims Fishkill lost his property, including the extra set of greens he could not take with him to Collins. He also claims his greens started "to really stink." (Pellis Dep. at 108). Other inmates "tend[ed] to shy away from [him], not wanting to be around [him]." (Id. at 109). While at Fishkill, plaintiff had access to a bathroom, buckets, and a sink, but he did not have a clothing line to dry his clothes.

On September 11, 2015, plaintiff was in the Fishkill yard when he vomited on his shirt, pants, and boots. Plaintiff was taken to the infirmary. Non-party Charmaine Waylon, a registered nurse, examined plaintiff on September 14, 2015. Waylon states, "[w]hen an inmate arrives in clothing that is soiled, for example by blood or vomit, it is sent to be cleaned while the inmate is in the infirmary." (Waylon Decl. ¶ 6). Plaintiff, however, contends his greens had vomit stains and a foul odor even after he returned from the infirmary. Waylon also states plaintiff was wearing only boxer shorts when she examined him, and she did not see any rashes, infections, or signs of poor hygiene.

Plaintiff was transferred to the Special Housing Unit ("SHU") on September 14, 2015. Plaintiff's SHU cell had a sink and shower stall, and on days plaintiff showered, he was given a bar of soap. Plaintiff concedes he could have washed his greens in the shower or sink, but asserts he would have had to wear wet clothes all day: "you have to be on your door fully dressed to receive meals, medication, if you have to be seen by a nurse, if you have any kind of call-out." (Pellis Dep. at 126–27). Plaintiff also asserts he could not use the laundry service because it takes eighteen hours, and thus he would not have greens during that time.

2

Plaintiff asserts he developed skin rashes and infections on his arms and buttocks starting in early to mid-August 2015. Plaintiff testified "[i]t was very painful" and he "could hardly even sit down." (Pellis Dep. at 101). Infirmary staff initially gave him hydrocortisone cream, and when that did not help they gave him Bacitracin and Tylenol. All of plaintiff's skin ailments were resolved by the end of October 2015.

According to plaintiff, a C.O. told him to write a letter to Lt. Hobbs, the Administration Lieutenant at the time, and to the State Shop, which distributes prison clothing. Plaintiff did so in mid-August 2015, shortly after returning to Fishkill from Collins. Lt. Hobbs states he did not know plaintiff "had any issues with his clothing until approximately September 30, 2015," when plaintiff's father informed Hobbs of the issue. (Hobbs Decl. ¶ 7).

Plaintiff asserts he spoke to Sgt. Padgett, SHU's Grievance Sergeant at the time, and on approximately September 18, 2015, separately filed a grievance with him. Plaintiff submitted a second grievance to Sgt. Padgett around the end of September 2015. Sgt. Padgett attempted to informally resolve the grievances "by taking the grievance[s] to the State Shop so that it could issue new clothing if warranted." (Padgett Decl. ¶ 6).

On September 30, 2015, after speaking with plaintiff's father, Lt. Hobbs requested that Sgt. Jason Riggins investigate the issue of plaintiff's clothing. Sgt. Riggins searched plaintiff's SHU cell, found he had only one set of greens, and gave plaintiff a second set of greens on October 1, 2015.

Plaintiff also alleges he did not have a jacket or sweater from October 3 through October 5, 2015, when the temperature dropped below sixty degrees. Plaintiff ran the shower to steam his cell and wore socks on his arms to stay warm. The window in the cell was closed, although it let in a "small amount of draft." (Pellis Dep. at 61). There was no heat, but plaintiff had a

3

blanket. After October 5, 2015, the weather warmed back to around sixty degrees. Plaintiff received a jacket and sweater on October 15, 2015.

## DISCUSSION

I. Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to

4

the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations and quotation marks omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need only consider evidence that would be admissible at trial. Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

II. Eighth Amendment Claim

Defendants argue plaintiff fails as a matter of law to establish an Eighth Amendment violation with regard to his lack of jacket or sweater and his unsanitary clothing.

The Court agrees as to plaintiff's lack of jacket or sweater.

The Court disagrees as to plaintiff's unsanitary clothing.

"While the Eighth Amendment's prohibition against cruel and unusual punishment 'does not mandate comfortable prisons,' the conditions of confinement must be at least 'humane.'" Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (internal citations omitted)). To establish a violation of Eighth Amendment rights, an inmate must show (i) "a deprivation that is

5

'objectively, sufficiently serious' that he was denied 'the minimal civilized measure of life's necessities,'" and (ii) "a 'sufficiently culpable state of mind' on the part of the defendant official, such as deliberate indifference to inmate health or safety." Id.

A.  Cold Weather Clothing

"[A]n Eighth Amendment claim may be established by proof that the inmate was subjected for a prolonged period to bitter cold." Gaston v. Coughlin, 249 F.3d at 164. "However, summary judgment is appropriate when the inmate has not been exposed to bitter cold for 'a prolonged period.'" Booker v. Maly, 2014 WL 1289579, at *19 (N.D.N.Y. Mar. 31, 2014) (internal citation omitted), aff'd, 590 F. App'x 82 (2d Cir. 2015) (summary order); see also Gardner v. Mental Health Unit of, Sullivan Corr. Facility, 2009 WL 1834382, at *2–3 (S.D.N.Y. June 17, 2009) (dismissing claim because plaintiff alleged only that he was "very cold" and "it lasted no more than seven days during the months of August and October").[1] An inmate's ability "to provide himself with livable conditions" defeats a claim for unconstitutional conditions of confinement based on exposure to cold. Brown v. McElroy, 160 F. Supp. 2d 699, 706 (S.D.N.Y. 2001) (dismissing claim because plaintiff admitted "he was able to get warm with some blankets" and did not claim "that he was without any clothing").

Here, no reasonable jury could conclude plaintiff was deprived of humane conditions of confinement on account of his lack of jacket or sweater from October 3 to October 5, 2015. Plaintiff complains of only three days, and asserts only that the temperature dropped below sixty degrees. The window was closed, plaintiff had a blanket, and plaintiff was able to warm his cell with steam from his shower.

---

[1] Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d. Cir. 2009).

6

Accordingly, plaintiff's Eighth Amendment conditions of confinement claim based on his lack of jacket or sweater fails as a matter of law.

B. <u>Unsanitary Clothing</u>

The objective element of a conditions of confinement claim is satisfied by "establishing a deprivation of 'basic human needs such as . . . safe and sanitary living conditions.'" <u>Garraway v. Griffin</u>, 707 F. App'x 16, 18 (2d Cir. 2017) (summary order) (quoting <u>Willey v. Kirkpatrick</u>, 801 F.3d 51, 68 (2d Cir. 2015)). There is no "bright-line durational" or "minimal level of grotesquerie" requirement for a viable unsanitary-conditions claim. <u>Willey v. Kirkpatrick</u>, 801 F.3d at 68. "[P]risoners are entitled under the constitution to have clothing that is clean or to have an opportunity to clean it themselves." <u>Benjamin v. Fraser</u>, 161 F. Supp. 2d 151, 178 (S.D.N.Y. 2001), <u>aff'd in relevant part, vacated in part</u>, 343 F.3d 35 (2d Cir. 2003).

The subjective element is satisfied by showing "the defendant 'acted with more than mere negligence' by, for instance, 'know[ing] of, and disregard[ing], an excessive risk to inmate health or safety.'" <u>Garraway v. Griffin</u>, 707 F. App'x at 19 (quoting <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013)). Courts may not grant summary judgment when there are issues of fact regarding whether defendants, who were advised of inhumane conditions of confinement, did or did not take action to resolve the inhumane conditions. <u>See id.</u> at 19.

Here, there are genuine issues of material fact as to whether plaintiff was deprived of safe and sanitary living conditions. Plaintiff had only one set of greens for more than two months, over two weeks of which, according to plaintiff, his greens were stained with vomit. Even before he vomited on his greens, plaintiff asserts other inmates shunned him to avoid the smell. Plaintiff also asserts he developed painful skin rashes and infections on his arms and buttocks starting in early to mid-August 2015.

Moreover, there are genuine issues of material fact regarding whether defendants knew of and disregarded an excessive risk to plaintiff's health and safety. Plaintiff claims he sent a letter to Lt. Hobbs in mid-August 2015; sent a request to the State Shop, where Campbell was State Shop Administrator, in mid-August 2015; and filed multiple grievances with and spoke to Sgt. Padgett as early as September 18, 2015. Plaintiff asserts he nonetheless did not receive a new set of greens until October 1, 2015. Construing the facts in plaintiff's favor, the Court concludes a reasonable jury could find all three defendants knew of and disregarded an excessive risk to plaintiff's health and safety.

Defendants argue plaintiff could have cleaned his greens in the shower or sink, despite the fact that he only had one set. This argument is unavailing.

Generally, there is no Eighth Amendment violation when "inmates are provided the opportunity and the supplies to wash their own clothes." Lunney v. Brureton, 2007 WL 1544629, at *14 (S.D.N.Y. May 29, 2007) (internal citation omitted), adopted by 2007 WL 2050301 (S.D.N.Y. July 18, 2007). However, the Court may not grant summary judgment when the parties disagree regarding whether the plaintiff could rectify the unsanitary conditions himself. See Garraway v. Griffin, 707 F. App'x at 19 (finding an issue of material fact concerning plaintiff's ability to clean a soiled mattress himself with disinfectant provided weekly to inmates).

Here, plaintiff asserts it was impracticable to clean his one set of greens because he would have had to wear wet clothes all day or otherwise not get food or medicine.

Defendants also argue the physical symptoms plaintiff experienced are not sufficiently serious to constitute a constitutional deprivation. The Court is not persuaded. "Although the seriousness of the harms suffered is relevant to calculating damages and may shed light on the

severity of an exposure, serious injury is unequivocally not a necessary element of an Eighth Amendment claim." Willey v. Kirkpatrick, 801 F.3d at 68.

Finally, defendants argue plaintiff's greens must have been laundered when he was sent to the infirmary on September 11, 2015. However, plaintiff asserts his clothing still had vomit stains even after he visited the infirmary. Thus, there is a genuine issue of material fact as to whether plaintiff's greens were clean after his infirmary visit.

Accordingly, summary judgment on plaintiff's unsanitary clothing claim against Lt. Hobbs, Sgt. Padgett, and Campbell is not warranted.

III. Failure to Exhaust

Defendants argue they are entitled to summary judgment on plaintiff's unsanitary clothing claim because plaintiff failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). See 42 U.S.C. § 1997e(a) ("No Action shall be brought with respect to prisons under . . . Federal law[ ] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

The Court disagrees.

For a New York state prisoner to exhaust a claim, he must comply with the rules of New York's Inmate Grievance Program ("IGP") with respect to that claim. The IGP provides for a means of informal resolution, in which the representatives of the Inmate Grievance Resolution Committee ("IGRC") have up to sixteen calendar days after a grievance is filed to resolve it informally. (Seguin Decl. Ex. 1 (DOCCS Directive No. 4040) § 701.5(b)(1)). "Resolution of the matter through informal channels satisfies the exhaustion requirement, as, under the administrative scheme applicable to New York prisoners, grieving through informal channels is an available remedy." Marvin v. Goord, 255 F.3d 40, 43 n.3 (2d Cir. 2001) (per curiam).

9

Here, plaintiff's grievance concerning his unsanitary clothing "was informally resolved when he was provided with a second set of clothing on October 1, 2015." (Padgett Decl. ¶ 7).

Accordingly, summary judgment on the basis of plaintiff's alleged failure to exhaust is denied.

IV. First Amendment Claim

Defendants argue the Court should grant summary judgment dismissing plaintiff's First Amendment claim against Sgt. Padgett for failing to forward plaintiff's grievances to the IGRC for a formal hearing.

The Court agrees.

Notwithstanding the First Amendment's guarantee of the right to petition the government for redress, "inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under [Section] 1983." Cancel v. Goord, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001). Indeed, any claim that plaintiff was deprived of his right to petition the government for redress is belied by the fact of his bringing this lawsuit. See Harris v. Westchester Cty. Dep't of Corr., 2008 WL 953616, at *5 (S.D.N.Y. Apr. 3, 2008) ("[I]n the event that prison officials ignore a grievance that raises constitutional claims, the proper avenue to seek relief is the course taken by plaintiff here: directly petitioning the government for redress of his claims.").

Accordingly, plaintiff's claim against Sgt. Padgett for failure to forward plaintiff's grievances fails as a matter of law.

V. Qualified Immunity

Defendants argue they are entitled to qualified immunity on plaintiff's conditions of confinement claim.

10

The Court disagrees.

Qualified immunity shields government officials whose conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The scope of qualified immunity is broad, and it protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Salim v. Proulx, 93 F.3d 86, 89 (2d Cir. 1996). "[F]or a right to be clearly established for purposes of a qualified immunity defense, the precise conduct at issue need not previously have been ruled unlawful." Griffin v. Amatucci, 611 F. App'x 732, 734 (2d Cir. 2015) (summary order) (quoting Zahrey v. Coffey, 221 F.3d 342, 357 (2d Cir. 2000)).

"Where a factual issue exists on the issue of motive or intent, a defendant's motion for summary judgment on the basis of qualified immunity must fail." Johnson v. Ganim, 342 F.3d 105, 117 (2d Cir. 2003). Moreover, "[t]he constitutional magnitude" of failing to respond to an inmate's complaints of unsafe and unsanitary conditions, "if proved, was clearly established by 2011 so as to defeat defendants' claim of qualified immunity." Garraway v. Griffin, 707 F. App'x at 18.

Here, the constitutional magnitude of failing to respond to plaintiff's complaints that he was subjected to unsafe and unsanitary conditions of confinement was clearly established by 2015. In addition, as explained above, there are genuine issues of material fact as to defendants' motive or intent in not supplying plaintiff with a second set of greens.

Accordingly, summary judgment on the basis of qualified immunity is not warranted.

11

## CONCLUSION

Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART.

Plaintiff and counsel for defendants are directed to appear for a status conference on July 23, 2018, at 2:15 p.m., at which time the Court will set a trial date and a schedule for pretrial submissions. Defendants' counsel shall make all necessary arrangements for plaintiff to appear by telephone.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion. (Doc. #61).

Dated: June 29, 2018
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge